[Cite as *Masters v. Ohio Dept. of Medicaid*, 2026-Ohio-1982.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amanda Masters et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 25AP-410 |
| v. | : | (C.P.C. No. 24CV-2793) |
| Ohio Department of Medicaid et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 28, 2026

**On brief:** *Sam G. Caras Co.*, *L.P.A.*, *Sam G. Caras*; *David M. Deutsch*, for appellants. **Argued:** *Sam. G. Caras*.

**On brief:** *Dave Yost*, Attorney General, *V. Alex Miller*, and *Caitlyn N. Johnson*, for appellees. **Argued:** *V. Alex Miller*.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Plaintiffs-appellants, Amanda Masters and Bud Masters, appeal from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of defendants-appellees, Ohio Department of Medicaid and its director, Maureen M. Corcoran (collectively "ODM").

## I. Facts and Procedural History

{¶ 2} In April 2010, appellants' minor child, F.M., was born prematurely, and "her preterm delivery resulted in [F.M.'s] permanent moderate mental retardation along with several physical impairments." (Compl. at ¶ 2.) ODM paid medical bills related to the premature birth of appellants' daughter totaling $338,421.70. (Compl. at ¶ 5.) In 2016, appellants filed suit in the Clark County Court of Common Pleas against the obstetricians

who cared for F.M., and appellants eventually entered into a settlement of their claims against those defendants "for 1.5 million dollars . . . subject to Clark County Common Pleas Court Probate Division approval." (Compl. at ¶ 8.)

{¶ 3} On November 8, 2021, appellants filed a complaint for declaratory judgment against ODM in the Clark County Court of Common Pleas, Probate Division ("Clark County Probate Court"), "challenging the validity, enforceability, and constitutionality of [ODM's] subrogation rights." *Masters v. Ohio Dept. of Medicaid*, 2022-Ohio-3075, ¶ 7 (2d Dist.). On December 9, 2021, ODM filed a motion to dismiss under Civ.R. 12(B)(1) and (6) "based on lack of subject matter jurisdiction." *Id.* at ¶ 12. By entry filed January 7, 2022, the Clark County Probate Court dismissed the complaint for lack of jurisdiction.

{¶ 4} Appellants appealed from the decision of the Clark County Probate Court, and the reviewing court addressed the issue "whether the trial court lacked subject matter jurisdiction over this case because the Masters were required to pursue the administrative process in R.C. 5160.37." *Id.* at ¶ 19. In *Masters*, the Second District Court of Appeals affirmed the judgment of the Clark County Probate Court. Relying on the Supreme Court of Ohio's decision in *Pivonka v. Corcoran*, 2020-Ohio-3476, the Second District held that, "because R.C. 5160.37 provides exclusive subject matter jurisdiction over the matters at issue, the trial court did not err in dismissing the complaint for lack of subject matter jurisdiction." *Id.* at ¶ 83.

{¶ 5} Appellants also requested an administrative hearing under R.C. 5160.37. On April 25, 2022, a hearing examiner for ODM conducted a hearing on the issue whether the amount of reimbursement of medical assistance paid by ODM should be "different than set forth in R.C. 5160.37." (ODM Hearing Examiner Decision at 1.) On September 7, 2022, the hearing examiner issued a report and recommendation, concluding that ODM was entitled to recover its medical expenditures in the amount of $338,421.70. The report and recommendation provided notice that, in accordance with Adm.Code 5160-80-09, appellants had the right to request an administrative appeal to the director of ODM.

{¶ 6} Appellants "did not make a request for an administrative appeal to the director of [ODM] for review of the hearing decision." *In re F.M.*, 2023-Ohio-4522, ¶ 8 (10th Dist.). Instead, on September 19, 2022, appellants "filed a notice of appeal with the trial court, pursuant to R.C. 119.12, from the . . . decision of the hearing examiner." *Id.*

ODM subsequently filed a motion to dismiss. By decision and entry filed January 19, 2023, the trial court dismissed the appeal for lack of subject-matter jurisdiction. On further appeal, this court, in *F.M.*, affirmed the judgment of the trial court on grounds R.C. 5160.37 did not authorize appellants' attempt to appeal directly from the hearing examiner's decision and because the decision appealed from was not an adjudication from which an appeal could be taken under R.C. 119.12.

{¶ 7} On April 5, 2024, appellants initiated the instant action by filing a complaint for declaratory judgment against ODM, "challenging the subject matter jurisdiction and legal validity, enforceability, and constitutionality of the subrogation rights of [ODM] including . . . its interpretation and application of [R.C.] 5160.37." (Compl. at ¶ 1.) The complaint alleged appellants offered to pay ODM $100,000 "to satisfy any subrogation interests" of ODM following the settlement of appellants' claims, but that ODM "first demanded total payment of $338,421.70, and last indicated it would accept $200,000 as a firm demand for its subrogation interests." (Compl. at ¶ 10.) Appellants requested a declaration that R.C. 5160.37 "is an illegal violation" of Ohio and federal substantive law and "conferred no subject matter jurisdiction" of ODM over appellants. (Compl. at ¶ 16.)

{¶ 8} On May 9, 2024, ODM filed a motion to dismiss, asserting lack of subject-matter jurisdiction, res judicata, failure to exhaust administrative remedies, and failure to state a claim upon which relief can be granted. In the motion to dismiss, ODM argued appellants had previously filed (on November 8, 2021) a complaint for declaratory judgment in the Clark County Probate Court which that court dismissed for lack of jurisdiction on grounds the administrative review process set forth in R.C. 5160.37 was the exclusive remedy available to appellants; ODM further noted that, following appellants' appeal of that decision, the Second District Court of Appeals affirmed the judgment of the Clark County Probate Court. ODM argued that, concurrent with the appeal to the Second District Court of Appeals, appellants requested and were provided an administrative hearing pursuant to R.C. 5160.37 which resulted in a written decision unfavorable to appellants, and appellants failed to properly appeal that decision; according to ODM, appellants were now "attempting to restart the litigation by way of a declaratory judgment action in this Court." (May 9, 2024 Mot. to Dismiss at 4.)

{¶ 9} On June 11, 2024, appellants filed a memorandum contra ODM's motion to dismiss, asserting that res judicata did not apply, and that R.C. 5160.37 is void and "offers no subject matter jurisdiction by ODM" over the settlement agreement as such statute violates the federal anti-lien statute, 42 U.S.C. §1396a(a)(25)(H). (Pls.' Memo in Opp. to Mot. to Dismiss at 14.) On June 18, 2024, ODM filed a reply to the memorandum contra.

{¶ 10} On June 26, 2024, appellants filed a motion for summary judgment. On August 21, 2024, ODM filed a memorandum contra the motion for summary judgment.

{¶ 11} On April 3, 2025, the trial court filed a decision granting ODM's motion to dismiss. In its decision, the court determined it lacked subject-matter jurisdiction "because R.C. 5160.37 provides the *sole* remedy for Medicaid program participants to recover excess reimbursement payments made to ODM." (Emphasis in original.) (Decision at 6.) The court also addressed the application of the doctrine of res judicata, finding "the issue of subject-matter jurisdiction was fully litigated in the Second Appellate District," and therefore appellants "are precluded from relitigating it again in this Court under the theory of issue preclusion res judicata." (Decision at 7.) As to the related issue of claim preclusion, the court held that the prior decision of the ODM hearing examiner "is conclusive and binding as to all claims raised by [appellants] and has a res judicata effect on [appellants'] attempt to relitigate those claims here." (Decision at 8.)

{¶ 12} Alternatively, the trial court determined, because appellants "had the ability to fully litigate all claims, constitutional or otherwise, within the administrative framework of R.C. 5160.37, but failed to exhaust that administrative remedy, [appellants'] claims in the current case are barred and must be dismissed." (Decision at 9-10.)

{¶ 13} Regarding appellants' request for declaratory judgment, the court held "that because there is no justiciable controversy between the parties as to the amount owed to ODM or any other uncertainty for the Court to determine, there is . . . no necessity for speedy relief to warrant the issuance of a declaratory judgment," and therefore appellants' claims for declaratory judgment "fail to state a claim upon which relief may be granted." (Decision at 11.) Further, having found the case to be barred by res judicata and appellants' failure to exhaust administrative remedies, and having further found appellants failed to state a claim for declaratory judgment, the trial court "decline[d] to consider the

constitutionality of R.C. 5160.37." (Decision at 11.) The trial court's decision granting ODM's motion to dismiss was journalized by judgment entry filed April 14, 2025.

## II. Assignments of Error

{¶ 14} On appeal, appellants set forth the following three assignments of error for our review:

> [I.] The trial court erred by denying it had subject matter jurisdiction to declare whether R.C. §5160.37 violates the Federal Anti-Lien Statute 42 U.S.C. §1396a et seq. and the Ohio and United States Constitutions.

> [II.] The trial court erred by failing to declare that R.C. §5160.37 offers no subject matter jurisdiction for the State of Ohio and Ohio Department of Medicaid over any part of Appellants' medical malpractice settlement because R.C. §5160.37 is a void/voidable nullity in derogation of the Ohio and United States Constitutions[.]

> [III.] The trial court erred by applying res judicata and collateral estoppel in the absence of any ruling by a Court with subject matter jurisdiction which determined whether R.C. §5160.37 is a void/voidable nullity in derogation of the Federal Anti-Lien Statute 42 U.S.C. §1396a et seq. and Ohio and United States Constitutions.

## III. Discussion

{¶ 15} Appellants' first and second assignments of error are interrelated and will be considered together. Under their first assignment of error, appellants assert the trial court erred by denying it had subject-matter jurisdiction to declare whether R.C. 5160.37 violates the federal anti-lien statute, 42 U.S.C. § 1396a et seq. Under the second assignment of error, appellants contend the court erred by failing to declare R.C. 5160.37 offers no subject-matter jurisdiction for the state and ODM over any part of their medical malpractice settlement because, according to appellants, R.C. 5160.37 is a "void/voidable nullity."

{¶ 16} As set forth under the facts, the trial court dismissed appellants' claims on four independent grounds: (1) lack of subject-matter jurisdiction; (2) the doctrine of res judicata; (3) failure to exhaust administrative remedies; and (4) failure to state a claim upon which relief can be granted. As noted by ODM, appellants' arguments on appeal focus on challenging the court's rulings regarding the issues of subject-matter jurisdiction and res judicata.

{¶ 17} Civ.R. 12(B)(1) authorizes dismissal "where the trial court lacks jurisdiction over the subject matter of the litigation." *Lowery v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-869, ¶ 6 (10th Dist.), citing *Guillory v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-2299, ¶ 6 (10th Dist.). The dismissal of a case by a trial court "for lack of subject-matter jurisdiction 'is a question of law reviewed by the appellate court de novo.' " *F.M.*, 2023-Ohio-4522, at ¶ 15 (10th Dist.), quoting *Ikemefuna Nkanginieme v. Ohio Dept. of Medicaid*, 2015-Ohio-656, ¶ 12 (10th Dist.), citing *Daniel v. Williams*, 2011-Ohio-1941, ¶ 9 (10th Dist.), citing *Ford v. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 375 (4th Dist. 1993). Subject-matter jurisdiction " 'refers to the statutory or constitutional power of a court to hear a case.' " *Id.*, quoting *Ikemefuna Nkanginieme* at ¶ 15. Whether subject-matter jurisdiction exists presents " 'a threshold question that will prevent a court from reaching the underlying issues in a case.' " *Id.*, quoting *Turner v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-6608, ¶ 9 (10th Dist.), citing *Rinehart v. Bank One, Columbus, N.A.*, 125 Ohio App.3d 719, 727 (10th Dist. 1998). Absent subject-matter jurisdiction, " 'a trial court has no power to act.' " *Id.*, quoting *Pivonka*, 2020-Ohio-3476, at ¶ 20, citing *State ex rel. Jones v. Suster*, 1998-Ohio-275.

{¶ 18} Pursuant to Civ.R. 12(B)(6), "a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted." *White v. Ohio Pub. Defender*, 2019-Ohio-5204, ¶ 10 (10th Dist.). A motion to dismiss under Civ.R. 12(B)(6) "tests the sufficiency of the complaint" and, in ruling on such motion, "the court must construe the complaint in the light most favorable to the plaintiff, presume all factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff." *Id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975); *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). This court "reviews de novo a trial court's decision to dismiss a claim under Civ.R. 12(B)(6)." *Burse v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-2882, ¶ 9 (10th Dist.), citing *Robinson v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-713, ¶ 6 (10th Dist.).

{¶ 19} Under Ohio law, "declaratory judgment actions are to be reviewed under an abuse-of-discretion standard." *Mid-American Fire & Cas. Co. v. Heasley*, 2007-Ohio-1248, ¶ 14. *See also OMG MSTR LSCO, L.L.C. v. Ohio Dept. of Medicaid*, 2018-Ohio-4843, ¶ 10 (10th Dist.), citing *Heasley* at paragraph two of the syllabus (noting that, while an

appellate court's standard of review in considering a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is "ordinarily" de novo, "[w]hen the trial court's judgment dismisses a complaint in declaratory judgment . . . the standard guiding our review is whether the trial court abused its discretion").

{¶ 20} In *Pivonka*, the Supreme Court provided a general overview of Ohio's Medicaid subrogation rights statute, noting that the federal Medicaid program "provides joint federal and state funding for medical care for individuals who cannot afford to pay their own medical costs." *Pivonka*, 2020-Ohio-3476, at ¶ 3. Under this framework, federal law "requires that each participating state give itself subrogation rights to recover certain costs the state paid under the Medicaid program," and "each state must enact legislation giving it the right to seek reimbursement from a third-party tortfeasor . . . for medical expenses that the third-party wrongdoer caused and the state paid on behalf of a Medicaid participant." *Id.* at ¶ 4. Therefore, "[w]hen a third party is liable to pay for the Medicaid participant's medical costs, the state must seek reimbursement for the medical costs that it paid under the Medicaid program," and the state "may also seek reimbursement from a Medicaid participant who received payment from the third party for the medical costs." *Id.*

{¶ 21} Ohio's Medicaid subrogation statute, "originally contained in former R.C. 5101.58," has undergone various amendments, and the current version is set forth under R.C. 5160.37. *Id.* at ¶ 5. The amended 2015 version of R.C. 5160.37 "created a 'rebuttable presumption' that the Department would receive no less than one-half of the remaining amount of the judgment, award or settlement after fees, expenses, and costs were deducted," and the statute "also provided a mechanism for the Medicaid participant to rebut the statute's presumption by way of an administrative hearing." *Id.* at ¶ 9.

{¶ 22} More "[s]pecifically, R.C. 5160.37(L) permits a party to seek to rebut the statutory presumption by requesting a hearing before a department hearing examiner." *F.M.*, 2023-Ohio-4522, at ¶ 20 (10th Dist.). Following that hearing, "the hearing examiner 'shall file its hearing decision,' and the decision 'shall provide notice to the appellant of the right to and the method of obtaining an administrative appeal.' " *Id.*, quoting Adm.Code 5160-80-08(D). Under R.C. 5160.37(M)(1), " '[a] medical assistance recipient who disagrees with a hearing examiner's decision under division (L) of this section may file an administrative appeal with the medical director in accordance with the procedure the

department establishes for this purpose in rules required by division (O) of this section.' " *Id.*, quoting R.C. 5160.37(M)(1). During such an administrative appeal, " 'the director . . . shall review the hearing examiner's decision and any prior relevant administrative action.' " *Id.*, quoting R.C. 5160.37(M)(1). After this "review, 'the director . . . shall affirm, modify, remand, or reverse the hearing decision,' " and the director "may also 'reverse, decrease, or increase any monetary finding made for the appellant if there is a basis in either law or the record for this action.' " *Id.*, quoting R.C. 5160.37(M)(1) and Adm.Code 5160-80-09(F)(1).

{¶ 23} Under R.C. 5160.37(N), " '[a] party to an administrative appeal described in division (M) of this section may file an appeal with a court of common pleas in accordance with section 119.12 of the Revised Code.' " *Id.* at ¶ 21, quoting R.C. 5160.37(N). Adm.Code 5160-80-09(F)(2) states "in part: 'The director shall file with the depository agent the directors administrative appeal decision, which shall include notice of the right to file an appeal with the court of common pleas of Franklin [C]ounty in accordance with section 119.12 of the Revised Code.' " *Id.*, quoting Adm.Code 5160-80-09(F)(2). Further, " '[a] decision made under this division is final and binding on the department . . . and the medical assistance recipient unless it is reversed or modified on appeal to a court of common pleas as described in division (N) of this section." *Id.*, quoting R.C. 5160.37(M)(1).

{¶ 24} As set forth above, appellants challenge (under their first assignment of error) the trial court's determination it lacked subject-matter jurisdiction over their claims. In addressing the jurisdictional issue in their respective briefs, both appellants and ODM cite to the Supreme Court's decision in *Pivonka*, but the parties disagree as to the import and application of that decision. While appellants assert the trial court erred in relying on *Pivonka*, ODM maintains the court properly applied the Supreme Court's holding in that case in determining the issue of its subject-matter jurisdiction.

{¶ 25} Under the facts of *Pivonka*, the plaintiffs-appellees filed a class action seeking a declaratory judgment that former R.C. 5101.58 (now renumbered as R.C. 5160.37), "which relates to Medicaid reimbursements, is unconstitutional." *Pivonka*, 2020-Ohio-3476, at ¶ 1. The plaintiffs-appellees in *Pivonka* also sought to recover "all sums paid to the Ohio Department of Medicaid . . . under that statute." *Id.* The Supreme Court in *Pivonka* held: "Because R.C. 5160.37 now provides the sole remedy for Medicaid program participants to recover excessive reimbursement payments made to the Department on or after

September 29, 2007, we conclude that the common pleas court lacked subject-matter jurisdiction over the class action for the . . . plaintiffs whose claims for recovery fall within the statute's express language." *Id.* at ¶ 2.

{¶ 26} In so holding, the Supreme Court noted that the General Assembly "has, from time to time, limited the common pleas courts' jurisdiction and given jurisdiction to another court," and that "[i]t has also given jurisdiction to certain administrative agencies over cases that the agencies are particularly well suited to handle." *Id.* at ¶ 22. The Supreme Court determined that, "[b]y enacting R.C. 5160.37, the General Assembly created an administrative-review process for Medicaid participants challenging their overpayment of money to the Department," and that such "administrative process is, by its own terms, the 'sole remedy' available to those individuals." *Id.* at ¶ 23, citing R.C. 5160.37(P).

{¶ 27} The Supreme Court further held the administrative review process "is complete and comprehensive," as the statute "identifies the steps required to request a hearing, the timing requirements for requesting a hearing, and the evidentiary standard required to rebut the statutory presumption." *Id.*, citing R.C. 5160.37(L)(1) and (2). The statutory framework also "prescribes the hearing examiner's authority to consider and weigh the evidence, the Department's ability to raise affirmative defenses, and other rules that apply to the hearing." *Id.*, citing R.C. 5160.37(L)(3). It also "provides a process for appealing the hearing examiner's decision to the Department's director," as well as "a process for appealing the director's decision to the common pleas court." *Id.*, citing R.C. 5160.37(M) and (N).

{¶ 28} Thus, the Supreme Court concluded, the administrative review process created by the General Assembly "has given tribunals acting under R.C. 5160.37 exclusive subject-matter jurisdiction over claims alleging that the Department received more money than it was entitled to receive under former R.C. 5101.58," and "[i]t applies equally to individuals who believe . . . the Department was not entitled to receive *any* money because that claim necessarily subsumes any claim that the Department received *more* money than it was entitled to receive." (Emphasis in original.) *Id.*

{¶ 29} In the present case, the trial court agreed with ODM's contention that appellants' complaint "must be dismissed for lack of subject matter jurisdiction because the administrative process in R.C. 5160.37 is the sole remedy for litigating disputes over the

amount Medicaid recipients must pay ODM after they obtain a tort recovery from liable third parties." (Decision at 4.) The court cited the holding in *Pivonka* for the proposition that "the administrative process in R.C. 5160.37 has exclusive subject-matter jurisdiction to hear challenges like [appellants] have alleged in the case at hand, including challenges to the constitutionality of the statute itself." (Decision at 4.)

{¶ 30} In addressing appellants' arguments regarding the issue of the subject-matter jurisdiction of the court and ODM, the trial court found appellants "appear to confuse the threshold issue of this Court's jurisdiction with their claim that ODM lacked jurisdiction over them." (Decision at 5.) Specifically, the trial court observed, while a court's subject-matter jurisdiction refers to its constitutional or statutory power to adjudicate a case, "the claim that an *agency* lacks jurisdiction can be asserted by a party in an administrative appeal challenging the validity of the agency's action." (Emphasis in original.) (Decision at 5.) Thus, the court concluded, appellants' contention that ODM's administrative proceeding "was invalid because it lacked jurisdiction over them . . . is an argument . . . this Court cannot address until its own jurisdiction is established." (Decision at 5-6.) Similarly, with respect to appellants' assertion the trial court had jurisdiction over their claims because R.C. 5160.37 violates the federal anti-lien statute, the court found this to be "a merit claim that this Court cannot reach unless it has jurisdiction to do so, which it does not." (Decision at 6.)

{¶ 31} Upon review, we find the trial court properly applied the holding in *Pivonka* to conclude it lacked subject-matter jurisdiction over appellants' claims. On appeal, appellants contend the trial court "was apparently impressed by dicta" in *Pivonka*. (Appellants' Brief at 9.) Specifically, appellants argue, "[i]n *Pivonka* dicta the Ohio Supreme Court observed that the scheme under [R.C. 5160.37] purported to provide a hearing, [ODM's] ability to raise affirmative defenses, that the statute's presumptions were purported to be 'rebuttable,' and that there were measures to appeal the Hearing Officer's decision." (Appellants' Brief at 9.)

{¶ 32} Appellants' characterization of the *Pivonka* court's discussion of the administrative review process under R.C. 5160.37 as mere dicta is not persuasive. Rather, the Supreme Court's analysis of that process was critical to its holding that R.C. 5160.37 "provides the sole remedy for Medicaid program participants to recover excessive

reimbursement payments" made to ODM, and to its determination "the common pleas court lacked subject-matter jurisdiction" over the action. *Pivonka*, 2020-Ohio-3476, at ¶ 2. Correspondingly, the Supreme Court's finding that the administrative review process under R.C. 5160.37 is "complete and comprehensive" was integral to its subject-matter jurisdiction analysis (i.e., not dicta). *Id.* at ¶ 23.

{¶ 33} Appellants further contend that "nothing derived from" the *Pivonka* holding or the language of R.C. 5160.37 "prevents declaratory relief by the trial court" to determine if that statute violates the federal anti-lien statute, and whether R.C. 5160.37 is unconstitutional as applied to appellants and facially. (Appellants' Brief at 11.)

{¶ 34} As noted above, however, the trial court observed the Supreme Court's decision in *Pivonka* "specifically held that the administrative process in R.C. 5160.37 has exclusive subject-matter jurisdiction to hear challenges like [appellants] have alleged in the case at hand, including challenges to the constitutionality of the statute itself." (Decision at 4.) We agree with the trial court's reading of *Pivonka*.

{¶ 35} In *Pivonka*, the plaintiffs raised the argument that "the class members should not be required to use the administrative-review process under R.C. 5160.37 because their entire action is based on a constitutional challenge to former R.C. 5101.58." *Pivonka*, 2020-Ohio-3476, at ¶ 24. The Supreme Court specifically rejected that argument, noting that "even though administrative agencies cannot adjudicate constitutional questions, . . . a party cannot circumvent the administrative-review process by first raising a constitutional challenge in the common pleas court." *Id.* Rather, the court held, "the proper procedure for raising a constitutional challenge is to first exhaust all administrative remedies," and "[a] party can then raise the constitutional challenge in the court that hears the administrative appeal." *Id.*, citing *Mobil Oil Corp. v. Rocky River*, 38 Ohio St.2d 23, 26 (1974.) *See also State ex rel. Kingsley v. State Emp. Relations Bd.*, 2011-Ohio-5519, ¶ 18 (recognizing that, while an administrative agency is without jurisdiction to determine constitutional validity of a statute, "facial and as-applied constitutional challenges can be raised on further appeal from an administrative agency to a court").

{¶ 36} As set forth under the facts of this case, appellants requested a hearing under R.C. 5160.37, and a hearing examiner rendered a decision, albeit adverse to appellants. Appellants did not, however, appeal that decision to the director of ODM, i.e., appellants

did not "first exhaust all administrative remedies" by availing themselves of the administrative review process and "then raise the constitutional challenge in the court that hears the administrative appeal." *Pivonka* at ¶ 24.

{¶ 37} In asserting that a declaratory judgment action was proper, appellants also rely on this court's decision in *Mulk v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-5850 (10th Dist.). Under the facts in *Mulk*, the appellants, who suffered injuries from the tortious conduct of third parties, later brought a declaratory judgment action against appellee, Ohio Department of Job and Family Services, seeking a declaration they were only obligated to reimburse appellants in the amount of medical expenses after a pro rata deduction of attorney's fees and costs incurred in obtaining settlement of their tort claims. While the trial court in this case granted appellees' motion for judgment on the pleadings, and this court affirmed that decision on appeal, appellants cite to *Mulk* for the proposition that this court "approved of a declaratory judgment action to determine the applicability of" R.C. 5101.58, the predecessor to R.C. 5160.37, "with recognition that the administrative process is effectively limited to application of the statute." (Appellants' Brief at 11.)

{¶ 38} In response, ODM argues that in 2011, when *Mulk* was decided, there was no administrative review process in former R.C. 5101.58. Specifically, ODM contends, the General Assembly "enacted that process in 2015" and, thus, while a declaratory judgment action would have been an appropriate vehicle "for challenging a Medicaid right of recovery" at the time *Mulk* was decided, R.C. 5160.37 "now provides the sole remedy for challenging ODM's right of recovery." (Appellees' Brief at 18.) We agree with ODM that *Mulk* is inapplicable to the present case in light of the subsequent enactment of the administrative review process in R.C. 5160.37 and the Supreme Court's holding in *Pivonka*.

{¶ 39} We note that appellants raised a similar argument in asserting the right to a declaratory judgment in their prior action against ODM in Clark County. Specifically, in *Masters*, 2022-Ohio-3075, at ¶ 79 (2d Dist.), appellants argued on appeal "that 'the precedent of the Tenth District Court of Appeals holding in *Mulk* . . . conclusively debunks Medicaid's challenge to the jurisdiction of the Clark County Probate Court to provide the declaratory relief sought by the Masters' Complaint.' " The Second District in *Masters* distinguished *Mulk* and found appellants' position "incorrect," noting "*Mulk* was decided

in 2011, long before the 2015 amendments to R.C. 5160.37, which created an administrative remedy." *Id.*

{¶ 40} Appellants further contend, under their second assignment of error, the trial court erred in failing to declare R.C. 5160.37 offers no subject-matter jurisdiction for ODM over any part of their settlement because that statute is "a void/voidable nullity in derogation of the Ohio and United States Constitutions." (Appellants' Brief at 14.) Appellants maintain the result of the formula under R.C. 5160.37(G)(1) and (2) violates the federal anti-lien statute "by failing to identify and protect the [a]ppellants' interests in their individual property rights to the non-subrogated portion of their settlement." (Appellants' Brief at 21.)

{¶ 41} In response, ODM notes the argument set forth under appellants' second assignment of error (i.e., that R.C. 5160.37 violates the federal anti-lien statute) concerns the merits of their claims, raised in their motion for summary judgment. ODM also notes the trial court did not reach this issue because it granted ODM's motion to dismiss and, by separate entry, the court denied as moot appellants' motion for summary judgment. ODM further argues appellants' brief assigns no error regarding the court's decision to find the motion for summary judgment moot, and ODM maintains that, because the court lacked subject-matter jurisdiction over the action, it lacked jurisdiction to make any declaration as to the constitutionality of R.C. 5160.37.

{¶ 42} As observed by ODM, the trial court found the merit arguments raised by appellants in their motion for summary judgment to be rendered moot. Specifically, by decision and entry filed on April 3, 2025, the court denied as moot appellants' motion for summary judgment in light of its "separate Decision" granting ODM's motion to dismiss "based on lack of subject matter jurisdiction, the doctrine of res judicata, the doctrine of failure to exhaust administrative remedies, and the failure to state a claim upon which relief can be granted." (Decision at 1-2.)

{¶ 43} Given our determination that the trial court did not err in holding it lacked subject-matter jurisdiction over the declaratory judgment action, the trial court did not err in failing to reach the merits of the underlying claims raised by appellants in the summary judgment motion. *See, e.g., Ohio Multi-Use Trails Assn. v. Vinton Cty. Commrs.*, 2009-Ohio-2061, ¶ 14 (4th Dist.) (because trial court "lacked subject matter jurisdiction, it had

no power or authority" to hear case, including constitutional challenge to statute); *Pivonka*, 2020-Ohio-3476, at ¶ 20, citing *Jones*, 1998-Ohio-275 ("Without subject-matter jurisdiction, a trial court has no power to act.").

{¶ 44} Based upon the foregoing, the trial court did not err in granting ODM's motion to dismiss appellants' complaint due to lack of subject-matter jurisdiction. Accordingly, appellants' first and second assignments of error are not well-taken and are overruled.

{¶ 45} Under the third assignment of error, appellants assert the trial court erred in its determination their claims were barred by the doctrine of res judicata. As noted under the facts, while the court concluded it lacked subject-matter jurisdiction over the action, it additionally (and alternatively) held dismissal was warranted based on the doctrine of res judicata (as well for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted). However, this court's disposition of the first assignment of error, finding the court properly granted dismissal for lack of subject-matter jurisdiction, renders moot the third assignment of error and we therefore do not address the court's additional ruling as to res judicata. *See, e.g.*, *Sunrise Coop., Inc. v. Joppeck*, 2017-Ohio-7654, ¶ 15 (9th Dist.) (declining to address argument as to trial court's res judicata determination "as it has been rendered moot in light of the determination that there was no subject-matter jurisdiction in the matter").

## IV. Conclusion

{¶ 46} Based on the foregoing, appellants' first and second assignments of error are overruled, the third assignment of error is rendered moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

JAMISON and DINGUS, JJ., concur.

———————————